FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLACIO INC., | No. 2:22-cv-00029-MKD |
| Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| vs. | |
| DONGGUAN SUTUO INDUSTRIAL CO. LTD., | **ECF Nos. 27, 30** |
| Defendants. | |

Before the Court is Plaintiff's Motion for Default Judgment, ECF Nos. 27, 30.[1] This matter was submitted for consideration without oral argument. The Court has considered Plaintiff's briefing, the record, and is fully informed. For the reasons discussed below, Plaintiff's Motion for Default Judgment, ECF Nos. 27, 30, is denied with leave to renew.

---

[1] ECF No. 30 is a sealed, unredacted version of the Motion for Default Judgment filed at ECF No. 27 with slight modifications.

ORDER - 1

# BACKGROUND

**A. Factual History**[2]

Plaintiff Glacio, Inc. ("Glacio") is a Wyoming corporation with a principal place of business in Washington that sells ice molds and related products on its own website, Amazon.com ("Amazon"), and other websites. ECF No. 1 at 2 ¶ 2; ECF Nos. 1-1, 1-3. Defendant Dongguan Sutuo Industrial Co., Ltd. ("DSI") is a Chinese corporation based in Dongguan, China. ECF No. 14 at 2 ¶ 3.

Glacio has sold its "Combo Mold" product through Amazon since June 28, 2015. ECF No. 1 at 5 ¶ 9; ECF No. 1-1 at 6. Glacio has sold its "Four Sphere Mold" product since August 28, 2018. ECF No. 1 at 7 ¶ 16; ECF No. 1-3 at 6.

On September 30, 2020, DSI filed for design patent protection on a product closely resembling Glacio's Combo Mold. ECF No. 1 at 5-6 ¶¶ 10-11; ECF No. 1-2. The United States Patent and Trademark Office ("USPTO") granted U.S. Design Patent No. D931,914 to DSI on September 28, 2021. ECF No. 1 at 6 ¶ 12; ECF No. 1-2; ECF No. 14 at 2 ¶ 3.

---

[2] These facts are drawn primarily from the allegations in Glacio's Complaint and supporting exhibits. "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

Also on September 30, 2020, DSI filed for design patent protection on a product closely resembling Glacio's Four Sphere Mold. ECF No. 1 at 7 ¶¶ 17-18; ECF No. 1-4, ECF No. 14 at 2 ¶ 3. The USPTO granted U.S. Design Patent No. D918,970 to DSI on May 11, 2021. ECF No. 1 at 8 ¶ 19; ECF No. 1-4; ECF No. 14 at 2 ¶ 3.

On February 16, 2022, Amazon informed Glacio that it had removed "some of [Glacio's product] listings because it had "received a report from a rights owner that [the listing] infringe[s] the rights owner's patent." ECF No. 1-5 at 2. The report cited Patent No. D931,914 and listed the product number for Glacio's Combo Mold. Thereafter, Glacio's Combo Mold was unavailable to Amazon customers until Amazon reinstated Glacio's product listing on March 9, 2022. ECF No. 28 at 2 ¶¶ 5-6, 8. Glacio alleges that its daily sales of its Combo Mold declined to near-zero in the weeks after February 16, 2022, and did not return to a comparable daily sales rate until approximately November 30, 2022. ECF No. 28 at 2 ¶ 7, 3-4 ¶¶ 9-13.

**B. Procedural History**

On February 23, 2022, Glacio filed a Complaint seeking a declaratory judgment of patent noninfringement, unenforceability, and invalidity under federal patent law; an enjoinder prohibiting DSI from asserting future wrongful patent

ORDER - 3

claims; and damages under Washington state law for tortious interference with Glacio's business.  ECF No. 1 at 13.

On June 30, 2022, DSI entered an appearance through counsel and answered the Complaint.  ECF Nos. 12, 14.  On September 19, 2022, Defense Counsel moved to withdraw.  ECF No. 19.  The Court granted Defense Counsel's motion on November 4, 2022, and further directed DSI to have new counsel of record or to file a motion to proceed without counsel on the basis of extraordinary circumstances by December 5, 2022.  ECF No. 24 at 3.  Since this Order, DSI has neither obtained new counsel of record nor filed any response.

Glacio moved for entry of default, and the Clerk of Court entered an order of default, on December 21, 2022.  ECF Nos. 25, 26.  Glacio now seeks default judgment on its claims for declaratory judgment of patent invalidity and unenforceability, damages for its state-law tort claim, and attorney's fees, but not its claim for injunctive relief.  *See* ECF No. 27 at 13-19.

## DISCUSSION

**A. Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" to "determine whether it

ORDER - 4

has the power . . . to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

### *1. Subject Matter Jurisdiction*

A federal district court has exclusive original jurisdiction over a civil action arising under federal patent protections. 28 U.S.C. § 1338(a). Section 1338(a) jurisdiction extends "to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-89 (1988). This includes claims for declaratory relief where "the threatened action in the absence of the declaratory judgment suit" would be a federal patent infringement action. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014). Here, Glacio's claims for declaratory relief "avoid[] that threatened" federal law patent infringement action and are therefore within the Court's Section 1338(a) subject matter jurisdiction. *See id.* at 198.

The Federal Circuit has noted that a state-law tortious interference claim might qualify for Section 1338(a) subject matter jurisdiction when it "involves determining [patent] infringement and validity." *See Maxchief Invs. Ltd. v. Wok &*

ORDER - 5

*Pan, Ind., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018).[3]  But to the extent that the Court lacks Section 1338 subject matter jurisdiction over Glacio's state-law claim, the Court has supplemental jurisdiction under 28 U.S.C. § 1367 as a state-law claim forming part of the same case or controversy as the Section 1338 claims.

### 2. *Personal Jurisdiction*

As explained below, the Court denies Glacio's motion for procedural noncompliance.  A full analysis of the Court's personal jurisdiction is therefore unnecessary.  However, the Court observes that, under the legal arguments raised in Glacio's motion, there is a question whether adequate grounds exist for the Court to exercise personal jurisdiction over DSI on some, or all, of Glacio's claims.  In the event that Glacio refiles a motion for default judgment, the Court directs Glacio to address the Court's jurisdiction over DSI as to each claim.

The facts currently before the Court indicate that the Court has personal jurisdiction over DSI, at least as to Glacio's claims for declaratory relief.  Federal

---

[3] The Federal Circuit had previously taken an expansive view of Section 1338 jurisdiction, which was overturned by the Supreme Court in *Gunn v. Minton*, 568 U.S. 251 (2013).  In *Maxchief Invs.*, the court opined that its prior cases "may well have survived" *Gunn v. Minton* but declined to decide that issue directly.  909 F.3d at 1140 n.3.

ORDER - 6

Circuit law on personal jurisdiction applies when patent law is central to the claims at issue. *Maxchief Invs.*, 909 F.3d at 1137.[4] When a district court determines personal jurisdiction without an evidentiary hearing, the plaintiff need only make a *prima facie* showing that the defendant is subject to personal jurisdiction. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (citation omitted). The plaintiff's uncontroverted allegations in the complaint are accepted as true, and any factual conflicts are resolved in the plaintiff's favor. *Id.*

To determine whether personal jurisdiction exists over an out-of-state defendant, the Federal Circuit uses a two-part inquiry: (1) whether the forum state's long arm-statute allows service of process and, if so, (2) whether assertion of personal jurisdiction would violate due process. *See id.* at 1352-53. Washington's long-arm statute permits courts to exercise jurisdiction over nonresident defendants to the full extent permitted by constitutional due process. *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citation omitted).

---

[4] While the *Maxchief Invs.* court declined to decide whether Section 1338 jurisdiction included the state-law tortious interference claim, it nevertheless applied Federal Circuit law in determining whether there was personal jurisdiction to decide that claim. 909 F.3d at 1140-41. Likewise, the Court will apply Federal Circuit law to the personal jurisdiction analysis for Glacio's claims.

ORDER - 7

Accordingly, "the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Xilinx*, 848 F.3d at 1353.

"Due process requires that a defendant have sufficient 'minimum contacts' with the forum state such that the suit not offend 'traditional notions of fair play and substantial justice.'" *Maxchief Invs.*, 909 F.3d at 1137 (quoting *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1785 (2017)). To have sufficient minimum contacts with the forum state, "the defendant must have purposefully directed its conduct at the forum state[, and] the claim must 'arise out of or relate to the defendant's contacts with the forum.'" *Id.* at 1138 (citations omitted). In the context of patent law, "communications threatening suit or proposing settlement or patent licenses can be sufficient to establish personal jurisdiction." *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021). But such communications must be adequately continuous; the Federal Circuit has found three communications between a defendant and an in-state plaintiff to be insufficiently continuous, while finding 22 communications with an in-state plaintiff to suffice. *See id.* at 1153-54, 1156-57 (distinguishing *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998)). *Cf. Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375-76 (Fed. Cir. 2022) (finding minimum contacts where the defendant "sent multiple communications to Apple in California and traveled twice to California" to discuss patent licensing and

ORDER - 8

infringement); *Xilinx*, F.4th at 1354 (finding minimum contacts where the defendant sent two notice letters to the plaintiff and, "more significant[ly]," traveled to the forum to discuss licensing and infringement issues with the plaintiff). If Glacio refiles, Glacio is directed to address whether DSI's sending of a single communication to Amazon, a Delaware corporation with a principal place of business in Washington,[5] is sufficient to establish minimum contacts with Washington under this standard.[6]

---

[5] *See, e.g.*, *Shenzhen Zongheng Domain Network Co., Ltd. v. Amazon.com Servs. LLC*, No. 23-cv-03334, 2023 WL 4993662, at *1 (S.D.N.Y. Aug. 4, 2023).

[6] The *Maxchief Invs.* court suggested that "a single letter directed to a business in the forum state could well create personal jurisdiction over a tortious interference claim" because state-law claims were not bound by the policy considerations underlying patent-law claims. 909 F.3d at 1140-41. However, the Federal Circuit acknowledged in *Trimble* that "[p]ersonal jurisdiction is not an area in which Congress has enacted a patent-specific statute" that distinguishes between patent-law and state-law claims. 997 F.3d at 1154-55 (citation omitted). In other words, if one communication is insufficient to establish minimum contacts relating to the patent-law claim, it would appear to be equally insufficient for the state-law claim.

ORDER - 9

As a potential alternative, Fed. R. Civ. P. 4(k)(2) provides that, for a claim arising under federal law, service of a summons establishes personal jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2). "Before the adoption of Rule 4(k)(2), a non-resident defendant who did not have 'minimum contacts' with any individual state sufficient to support exercise of jurisdiction, but did have sufficient contacts with the United States as a whole, could escape jurisdiction in all fifty states." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1414 (Fed. Cir. 2009). Rule 4(k)(2) was intended to close this "loophole" by ensuring "that federal claims will have a U.S. forum if sufficient *national* contacts exist." *Id.* (citation omitted) (emphasis added).

A claim necessarily arises under federal law for Rule 4(k)(2) purposes when it is within the court's subject matter jurisdiction under 28 U.S.C. § 1338. *Id.* at 1413. As explained above, Glacio's claims for declaratory relief fall within the Court's Section 1338 jurisdiction and therefore arise under federal law. It is unclear whether the same could be said about Glacio's state-law claim. The law remains unsettled as to whether a state-law tortious interference claim falls under Section 1338 jurisdiction, and the Court will not opine on a dispute that Plaintiff has not articulated and briefed. *See Maxchief Invs.*, 909 F.3d at 1140 n.3.

ORDER - 10

With regard to Rule 4(k)(2)(A), the Federal Circuit has held that the defendant has the burden of establishing that it would, in fact, be subject to a state court's jurisdiction. *Touchcom*, 574 F.3d at 1414-15 (citations omitted). In its Answer, DSI stated that it "disputes the Court's jurisdiction in this matter" and denied the allegations in the Complaint pertaining to subject matter and personal jurisdiction. ECF No. 14 at 1-2. However, DSI has not articulated any basis for its jurisdictional challenge. The facts currently before the Court do not establish that DSI would be subject to any state court's jurisdiction, so the requirement in Rule 4(k)(2)(A) would be satisfied.

Finally, Rule 4(k)(2)(B) requires the Court to perform the above-described due process test based on DSI's "contacts with the nation as a whole." *Touchcom*, 574 F.3d at 1416 (citation omitted). That a defendant "obtained a U.S. patent . . . by availing themselves of the only [U.S.] agency authorized to issue such patents" suffices to establish minimum contacts with the United States, even if the defendant "never physically entered the country in doing so." *Id.* Here, DSI has admitted that it owns Patent Nos. D931,914 and D918,970; in other words, DSI has availed itself of the USPTO at least twice. *See* ECF No. 14 at 2 ¶ 3. DSI also sought to enforce one of those patents by sending a notice of infringement to Amazon, a U.S. company, relating to the product listing of Glacio, another U.S. company. This case arises directly out of these contacts. It appears DSI would

ORDER - 11

have sufficient minimum contacts with the United States, out of which Glacio's declaratory judgment claims arise, to establish specific jurisdiction under Rule 4(k)(2). *See Trimble Inc.*, 997 F.3d at 1156; *Touchcom*, 574 F.3d at 1416-17.

Ultimately, the Court requires further argument from Glacio concerning the basis for the Court's personal jurisdiction over DSI as to each of Glacio's claims.

**B. Default Judgment**

"[T]he general rule [is] that default judgments are ordinarily disfavored. Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). But where decision on the merits is not reasonably possible, the process for obtaining an entry of default and a default judgment is set forth in Fed. R. Civ. P. 55 and Local Civil Rule (LCivR) 55. Glacio has failed to comply with these rules.

First, LCivR 55(a)(1) provides as follows:

> "Notice Required. Written notice of the intention to move for entry of default *must* be provided[,] if counsel is unknown, to the party against whom default is sought. . . . If notice cannot be provided because the identity of counsel or the whereabouts of a party are unknown, the moving party shall inform the Clerk of Court in the declaration or affidavit."

(emphasis added). Although Fed. R. Civ. P. 55(a) does not require notice to the defaulting party, the Ninth Circuit has held that the failure to provide notice under subsection (b)(2), "if the notice is required, is a serious procedural irregularity"

ORDER - 12

that will usually justify setting aside the resulting default judgment. *Wilson v. Moore & Assocs.*, 564 F.2d 366, 369 (9th Cir. 1977). "The major consideration is that the party is made aware that a default judgment may be entered against" them. *Id.* (citation and quotation omitted). This logic applies equally to the notice required by LCivR 55(a)(1). Written notices must be served on parties who are not ECF users in accordance with Fed. R. Civ. P. 5 and LCivR 5. Service by email is not permitted upon a party who has not previously consented to such service in writing. Fed. R. Civ. P. 5(b)(2)(E).

The certificates of service for Glacio's Motion for Entry of Default and LCivR 55(a)(1) Notice reflect that Glacio served only one of the four[7] email addresses it previously used to serve the Summons and Complaint. ECF No. 25 at 3; ECF No. 25-1 at 4. It did not serve the email address identified by former Defense Counsel as their then-current point of contact for DSI concerning this case. *See* ECF No. 19 at 2 ¶ 3. It did not submit a declaration or affidavit informing the Clerk of Court that notice could not be provided. It has not indicated that DSI consented in writing to be served at that single email address.

---

[7] Glacio attempted service of the Summons and Complaint on five email addresses and received an "undeliverable" response from one email address. ECF No. 9 at 2.

ORDER - 13

The Court appreciates the difficulties that Glacio has faced in serving process upon DSI, which eventually led to the Court's authorization of service of process by email under Fed. R. Civ. P. 4(f)(3). *See* ECF No. 7. But if Glacio believed that alternative service was also permitted for its LCivR 55(a)(1) Notice, it should have served all four email addresses contained in the Court's previous authorization. Given that proper notice is a "major consideration" in the validity of a default judgment, it is also notable that Glacio did not serve the email address provided by former Defense Counsel. It would not have been burdensome for Glacio to serve a handful of email addresses instead of just one, or to explain its justification for not doing so. Meanwhile, serving only one of the emails associated with DSI made it less likely that DSI would be made aware of an impending default judgment. *See Wilson*, 564 F.2d at 369. Accordingly, Glacio has not complied with LCivR 55(a)(1).

Second, Glacio was also required to serve DSI with the instant motion. *See* Fed. R. Civ. P. 5(a)(1), 55(b)(2); LCivR 5(b), 55(b)(1). The exception in Fed. R. Civ. P. 5(a)(2) for "a party who is in default for failing to appear" does not apply to a party who appears and subsequently defaults. *See Radack v. Norwegian Am. Line Agency*, 318 F.2d 538, 541-42 (2d Cir. 1963) ("These provisions are clearly intended to apply only to parties who have never made an appearance; they are inapplicable where a party has failed to make an appearance at some subsequent

ORDER - 14

stage of proceedings."); *see also* 4B Fed. Prac. & Proc. Civ. § 1144 (4th ed.). No certificate of service accompanied Glacio's instant Motion for Default Judgment.

Third, Glacio failed to comply with LCivR 55(a)(2), which provides as follows:

> **(2) Declaration or Affidavit Required.** The moving party *must* show (a) that the party against whom default is sought was properly served with the summons and complaint in a manner authorized by Federal Rule of Civil Procedure 4; (b) that the party has failed to timely plead or otherwise defend; and (c) that proper notice of the intention to seek an entry of default, as described [in subsection (1)], has been accomplished.

(emphasis added). Glacio did not provide such a declaration or affidavit alongside its motion for entry of default. *See* ECF No. 25.

Fourth, LCivR 55(b)(1) imposes a similar requirement on a motion for default judgment:

> "By declaration or affidavit, the moving party *must* (A) specify whether the party against whom judgment is sought is an infant or an incompetent person and, if so, whether that person is represented by a general guardian, conservator, or other like fiduciary; and (B) attest that the Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501-597b, does not apply."

LCivR 55(b)(1) (emphasis added). Glacio has not filed a declaration or affidavit concerning these matters and has therefore not complied with this rule.

A plaintiff's noncompliance with the applicable Local Civil Rules is sufficient basis to deny a motion for default judgment. *See, e.g., Perks v. SLI*

ORDER - 15

*Techs., Inc.*, No. 2:20-cv-95, 2020 WL 8992484, at *3 (E.D. Wash. May 6, 2020). But the Court notes one additional issue that "cast[s] doubt over the merits and sufficiency of the complaint, the sum of money at stake, and the validity of default judgment in this case when courts generally favor deciding cases on their merits— *Eitel* factors two, three, four, and seven." *See Bds. of Trs. of the Locals 302 & 612 v. Donkey Hoof LLC*, No. 22-CV-731, 2022 WL 17716443, at *5-6 (W.D. Wash. Dec. 15, 2022). In short, there is least one apparent factual inconsistency in Glacio's claim for damages. In its motion and a supporting declaration, it claims that it was selling an average of 170 Combo Mold units per day during the 90-day period before February 16, 2022; its supporting sealed exhibit reflects an average of a different, lesser number of units per day. *Compare* ECF No. 28 at 3 ¶ 11 *with* ECF No. 31-1 at 2. This difference, over the 288 days for which Glacio is claiming lost sales, amounts to a difference which is significant in terms of lost sales and potential lost profits. It is not readily apparent which of these two figures was used by Glacio in calculating its sum of requested damages. This discrepancy should be resolved before the Court considers a damages award.

## CONCLUSION

For the above reasons, the Court denies Plaintiff's Motion for Default Judgment. Because the foregoing issues may be correctable in an amended motion, the motion is denied with leave to renew. In the event Glacio refiles its

motion and renews its request for attorney's fees,[8] the Court will not award fees for preparing the initial filings.

Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Default Judgment, **ECF Nos. 27, 30,** is **DENIED with leave to renew**.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order and provide copies to counsel, the Defendant, and the District Court Financial Administrator.

DATED September 28, 2023.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

---

[8] At this time, the Court makes no findings as to whether attorney's fees are permitted or appropriate in this matter.

ORDER - 17