FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 18, 2024

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GLACIO INC., | No. 2:22-CV-00029-MKD |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S SECOND MOTION FOR DEFAULT JUDGMENT |
| vs. | |
| DONGGUAN SUTUO INDUSTRIAL CO. LTD., | ECF Nos. 36, 40 |
| Defendants. | |

Before the Court is Plaintiff Glacio Inc.'s Second Motion for Default Judgment, ECF No. 36. This matter was submitted for consideration without oral argument. The Court has considered the briefing, the record, and is fully informed. Defendant Dongguan Sutuo Industrial Co. Ltd. has not appeared or otherwise participated in the pending action since defense counsel withdrew in November 2022, nor has it responded to the Order of Default issued by the Clerk of Court on December 21, 2022. ECF Nos. 24, 26. There being no reason for further delay, and for the reasons discussed below, the Court grants Plaintiff's Motion.

ORDER - 1

# BACKGROUND

## A. Factual History

Plaintiff is a Wyoming corporation with a principal place of business in Washington that sells ice molds and related products on Amazon.com ("Amazon"), its own website, and other websites. ECF No. 1 at 2 ¶ 2; ECF Nos. 1-1, 1-3. Defendant is a Chinese corporation based in Dongguan, China. ECF No. 14 at 2 ¶ 3.

There are two products at issue in this litigation. The first is Plaintiff's "Combo Mold," which Plaintiff has sold through Amazon since June 28, 2015. ECF No. 1 at 5 ¶ 9; ECF No. 1-1 at 6. The second is Plaintiff's "Four Sphere Mold," which Plaintiff has sold through Amazon since August 28, 2018. ECF No. 1 at 7 ¶ 16; ECF No. 1-3 at 6.

On September 30, 2020, Defendant filed patent applications for two products, one resembling Plaintiff's Combo Mold and the other resembling Plaintiff's Four Sphere Mold. ECF No. 1 at 5-6 ¶¶ 10-11, 7 ¶¶ 17-18; ECF No. 1-2; ECF No. 1-4; ECF No. 14 at 2 ¶ 3. The U.S. Patent and Trademark Office ("USPTO") granted U.S. Design Patent No. D931,914 to Defendant on September 28, 2021, for the product resembling the Combo Mold. ECF No. 1 at 6 ¶ 12; ECF No. 1-2; ECF No. 14 at 2 ¶ 3. The USPTO granted U.S. Design Patent No. D918,970 to Defendant on May 11, 2021, for the product resembling the Four Sphere Mold. ECF No. 1 at 8 ¶ 19; ECF No. 1-4; ECF No. 14 at 2 ¶ 3.

1    On February 16, 2022, Amazon informed Plaintiff that it had removed "some

2    of [Plaintiff's product] listings" because it had "received a report from a rights

3    owner that [the listings] infringe the rights owner's patent."  ECF No. 1-5 at 2.  The

4    report cited Patent No. D931,914 and listed the product number for Plaintiff's

5    Combo Mold.  *Id.* at 3.  Thereafter, Plaintiff's Combo Mold was unavailable to

6    Amazon customers until Amazon reinstated the product listing on March 9, 2022.

7    ECF No. 37 at 2 ¶¶ 5-6, 8.  Plaintiff contends that it had zero daily sales of its

8    Combo Mold on Amazon in the weeks between February 16 and March 9, 2022, and

9    that sales did not return to a comparable daily rate until approximately

10   November 30, 2022.  ECF No. 37 at 2 ¶ 7, 3-4 ¶¶ 9-14.

11   **B. Procedural History**

12       On February 23, 2022, Plaintiff filed a Complaint seeking a declaratory

13   judgment of patent noninfringement, unenforceability, and invalidity under federal

14   patent law; an enjoinder prohibiting Defendant from asserting future wrongful patent

15   claims; and damages under Washington law for tortious interference with Plaintiff's

16   contractual relationship with Amazon.  ECF No. 1 at 13-14.

17       On June 30, 2022, Defendant entered an appearance through counsel and filed

18   an Answer.  ECF Nos. 12, 14.

19       On September 19, 2022, defense counsel moved to withdraw.  ECF No. 19.

20   The Court conducted a hearing on the motion on November 3, 2022.  ECF No. 23.

ORDER - 3

Former defense counsel noted they had asked Defendant to have a corporate representative attend the hearing, but no representative appeared.  ECF No. 24 at 1. The Court granted defense counsel's motion on November 4, 2022, and directed Defendant either to seek new counsel of record or to file a motion to proceed without counsel on the basis of extraordinary circumstances, by no later than December 5, 2022.  ECF No. 24 at 3.  To date, Defendant has not obtained new counsel of record nor filed any response.

On December 21, 2022, Plaintiff moved for entry of default, and the Clerk of Court entered an Order of Default.  ECF Nos. 25, 26.  On February 17, 2023, Plaintiff filed a Motion for Default Judgment, seeking default judgment on its claims for declaratory judgment of patent invalidity and unenforceability, damages for its state-law tort claim, and attorney's fees,[1] but not its claim for injunctive relief.  *See* ECF No. 27 at 12-19.  The Court denied the motion for procedural noncompliance, with leave to renew.  ECF No. 32 at 6.

Plaintiff filed a Second Motion for Default Judgment on December 4, 2023, ECF No. 36, and a supplemental declaration on March 26, 2024, ECF No. 42.

---

[1] In the instant Motion, Plaintiff does not pursue the claim for injunctive relief that was included in the Complaint.  *See* ECF No. 1 at 13 ¶ D.

ORDER - 4

# DISCUSSION

## A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties" to "determine whether it has the power . . . to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).

### 1. Subject Matter Jurisdiction

The federal district courts have exclusive original jurisdiction over a civil action arising under federal patent protections. 28 U.S.C. § 1338(a). Section 1338(a) jurisdiction extends "to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law, in that patent law is a necessary element of one of the well-pleaded claims." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808-89 (1988). This includes claims for declaratory relief where "the threatened action in the absence of the declaratory judgment suit" would be a federal patent infringement action. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014). Here, Plaintiff's claims for declaratory relief "avoid[] that threatened" federal law

ORDER - 5

1  patent infringement action and are therefore within the Court's Section 1338(a)

2  subject matter jurisdiction.  *See id.* at 198.

3       The Federal Circuit has noted that a state-law tortious interference claim

4  might confer Section 1338(a) subject matter jurisdiction when it "involves

5  determining [patent] infringement and validity."  *See Maxchief Invs. Ltd. v. Wok &*

6  *Pan, Ind., Inc.*, 909 F.3d 1134, 1140 n.3 (Fed. Cir. 2018).[2]  Regardless, the Court has

7  supplemental jurisdiction under 28 U.S.C. § 1367, as a state law claim forming part

8  of the same case or controversy as the Section 1338 claims.  The tortious-

9  interference claim arises from the same occurrences (Defendant's patent-

10 enforcement complaint to Amazon) as the claims for declaratory relief.  *See* ECF

11 No. 1 at 11-12 ¶¶ 39-42.

12      *2.  Personal Jurisdiction*

13      In cases where "the jurisdictional issue is intimately involved with the

14 substance of the patent laws," Federal Circuit precedent applies to the personal

15

16 [2] The Federal Circuit previously took an expansive view of Section 1338

17 jurisdiction, which was overturned by the Supreme Court in *Gunn v. Minton*, 568

18 U.S. 251 (2013).  In *Maxchief Investments*, 909 F.3d at 1140 n.3, the Federal Circuit

19 suggested that its prior cases "may well have survived" *Gunn*, but it declined to

20 decide that issue directly.

ORDER - 6

jurisdiction inquiry. *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017) (quoting *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009)) (quotation marks omitted).  To determine whether personal jurisdiction exists over an out-of-state defendant, the Federal Circuit uses a two-part inquiry: (1) whether the forum state's long arm-statute allows service of process and, if so, (2) whether assertion of personal jurisdiction would violate due process.  *See id.* at 1352-53 (citation omitted).  Washington's long-arm statute permits Washington courts to exercise jurisdiction over nonresident defendants to the full extent permitted by constitutional due process.  *Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir. 2004) (citation omitted); *see also Noll v. Am. Biltrite, Inc.*, 395 P.3d 1021, 1026 (Wash. 2014) (en banc) ("Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists in Washington over nonresident defendants and foreign corporations as long as it complies with federal due process.").  "Accordingly, 'the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process.'" *Xilinx*, 848 F.3d at 1353 (citing *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)).

a.  Minimum Contacts with Washington

"Due process requires that a defendant have sufficient 'minimum contacts' with the forum state such that the suit not offend 'traditional notions of fair play and substantial justice.'" *Maxchief Invs.*, 909 F.3d at 1137 (quoting *Bristol-Myers*

ORDER - 7

1   *Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1785 (2017)).  To have sufficient

2   minimum contacts, "the defendant must have purposefully directed its conduct at the

3   forum state[,]" and "the claim must arise out of or relate to the defendant's contacts

4   with the forum."  *Id.* at 1138 (citation and internal quotations omitted).

5           In the context of patent law, "communications threatening suit or proposing

6   settlement or patent licenses can be sufficient to establish personal jurisdiction."

7   *Trimble Inc. v. PerDiemCo LLC*, 997 F.3d 1147, 1155 (Fed. Cir. 2021).  But such

8   communications must be adequately continuous.  *Id.* at 1156.  The Federal Circuit

9   has found that three communications asserting patent infringement from a defendant

10  to an in-state plaintiff did not establish jurisdiction, while 22 such communications

11  in three months did.  *Id*. at 1153-57 (distinguishing the 22 communications

12  PerDiemCo sent to the forum-resident plaintiff from the circumstances in *Red Wing*

13  *Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355 (Fed. Cir. 1998)); *see also*

14  *Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1375-76 (Fed. Cir. 2022) (finding

15  minimum contacts where the defendant "sent multiple communications to Apple in

16  California and traveled twice to California" to discuss patent licensing and

17  infringement); *Xilinx*, 843 F.4th at 1354 (finding minimum contacts where the

18  defendant sent two notice letters to the plaintiff and, "more significant[ly]," traveled

19  to the forum to discuss licensing and infringement issues with the plaintiff).

20

1    The Complaint alleges one communication from Defendant to a Washington

2 entity (Amazon).  ECF No. 1 at 6 ¶ 13, 8-9 ¶¶ 21-22 (citing Amazon Infringement

3 Complaint attached at ECF No. 1-5).  Plaintiff has submitted a declaration from its

4 owner, Geoff Wilson, that mentions one communication from Defendant to

5 Amazon.  ECF No. 37 at 1-2 ¶ 3.  In the instant motion, Plaintiff contends Defendant

6 "engaged in numerous contacts with Amazon as part of the formal Amazon take

7 down process."  ECF No. 36 at 8.  But nothing in the record indicates that Defendant

8 had more than one contact with Amazon pertinent to this case.

9    Plaintiff has not clearly demonstrated that Defendant's sending of a single

10 communication to Amazon, a nonparty Delaware corporation with a principal place

11 of business in Washington,[3] suffices to establish a Washington court's jurisdiction

12 over Defendant for Plaintiff's patent-law claims, in light of Federal Circuit precedent

13 like *Trimble*, *Zipit Wireless*, and *Xilinx*.  However, the Court need not resolve this

14 issue now because there is a clear basis for personal jurisdiction under Fed. R. Civ.

15 P. 4(k)(2), as explained below.

16

17    [3] *See, e.g.*, *Shenzhen Zongheng Domain Network Co., Ltd. v. Amazon.com Servs.*

18 *LLC*, No. 23-cv-03334, 2023 WL 4993662, at *1 (S.D.N.Y. Aug. 4, 2023)

19 ("Respondent Amazon.com is a Delaware corporation with its principal place of

20 business in Seattle, Washington . . . .").

ORDER - 9

b.  Minimum Contacts with the United States

Alternatively, Fed. R. Civ. P. 4(k)(2) provides that, for a claim arising under federal law, service of a summons establishes personal jurisdiction over a defendant if "(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

i.  Claim Arising Under Federal Law

A claim necessarily arises under federal law for Rule 4(k)(2) purposes when it is within the court's subject matter jurisdiction under 28 U.S.C. § 1338.  *Touchcom*, 574 F.3d at 1413.  As explained above, Plaintiff's patent infringement claims fall within the Court's Section 1338(a) subject matter jurisdiction and therefore arise under federal law.

As for the state-law claim, Plaintiff argues that the Court may exercise pendent personal jurisdiction.  ECF No. 36 at 8-9.  The Federal Circuit has explained that 28 U.S.C. § 1367(a) may "confer[] supplemental jurisdiction with respect to both subject matter and personal jurisdiction where the 'same case or controversy' requirement is satisfied."  *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed. Cir. 2003) (quoting *Inamed*, 249 F.3d at 1362-63); *cf. Zipit Wireless*, 30 F.4th at 1378 (clarifying that cases like *Silent Drive* should not be interpreted to

ORDER - 10

1    establish bright-line rules and that the personal jurisdiction inquiry still requires

2    case-specific considerations of fairness and reasonableness).

3          As explained above, Plaintiff's state-law claim involves the same case or

4    controversy as its federal-law claims, thereby providing a basis for the Court to

5    exercise supplemental jurisdiction with respect to both subject matter and personal

6    jurisdiction.  *See Silent Drive*, 326 F.3d at 1206.  Further considerations of fairness

7    and reasonableness are addressed below, under the due process analysis required by

8    Rule 4(k)(2)(B).  *See Zipit Wireless*, 30 F.4th at 1378.

9                    ii.  Defendant Not Subject to Any State's Jurisdiction

10         To argue that it is not subject to the forum state court's jurisdiction under Rule

11   4(k)(2), the defendant bears the burden of establishing that it is subject to another

12   state court's jurisdiction; if it "refuses to identify any other state where suit is

13   possible, then the federal court is entitled to use Rule 4(k)(2)."  *Touchcom*, 574 F.3d

14   at 1414-15 (citation and quotation marks omitted).  In its Answer, Defendant stated

15   that it "disputes the Court's jurisdiction in this matter" and specifically denied the

16   allegations pertaining to subject matter and personal jurisdiction.  ECF No. 14 at 1-2.

17   However, Defendant has not articulated a particular basis for its jurisdictional

18   challenge, let alone established that it would be subject to another state's court of

19   general jurisdiction.

20

iii. Due Process Test

Finally, Rule 4(k)(2)(B) requires the Court to perform the above-described due process test based on Defendant's "contacts with the nation as a whole." *Touchcom*, 574 F.3d at 1416 (citation and quotation omitted).  That a defendant "obtained a U.S. patent . . . by availing themselves of the only [U.S.] agency authorized to issue such patents" suffices to establish the defendant's purposeful contacts with the United States, even if the defendant "never physically entered the country in doing so . . . ." *Id.*

Here, Defendant has admitted that it owns Patent Nos. D931,914 and D918,970.  ECF No. 14 at 2 ¶ 3.  In other words, Defendant has availed itself of the USPTO on at least two occasions.  Defendant also sought to enforce one of those patents by sending a notice of infringement to Amazon, a U.S. company, relating to a product listing from Plaintiff, another U.S. company.  The instant case arises directly out of these contacts.  Defendant has sufficient minimum contacts with the United States that arise out of or relate to the instant case to establish specific jurisdiction under Rule 4(k)(2).  *See Trimble Inc.*, 997 F.3d at 1156.

In sum, the Court has proper subject matter jurisdiction over these claims under 28 U.S.C. §§ 1338(a) and 1367, and personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2) and 28 U.S.C. § 1367.

1    **B. Procedural Requirements**

2        The process for obtaining a default judgment is set forth in Fed. R. Civ.

3    P. 55(b) and LCivR 55(b).  The Court is satisfied that Plaintiff has complied with

4    these procedural requirements.  In particular, the Court notes that Plaintiff's counsel

5    submitted a supplemental declaration on March 26, 2024, that complies with the

6    requirements of LCivR 55(b)(1)(A)-(B).  ECF No. 42.

7    **C. Substantive Requirements: *Eitel* Factors**

8        Upon default, the Court assumes that the well-pleaded allegations in the

9    complaint, except those relating to the amount of damages, are true.  *Geddes v.*

10    *United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*,

11    323 U.S. 1, 12 (1944)).  The Court considers seven factors in exercising its

12    discretion to enter a default judgment: "(1) the possibility of prejudice to the

13    plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the

14    complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a

15    dispute concerning material facts[,] (6) whether the default was due to excusable

16    neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure

17    favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th

18    Cir. 1986).

19        *1.  Possibility of Prejudice*

20        Under the first *Eitel* factor, "prejudice exists where the plaintiff has no

1   recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*,

2   33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citation and quotation marks

3   omitted). Defendant has failed to comply with the previous order directing

4   Defendant to obtain new counsel or move to proceed without counsel, ECF No. 24,

5   and has otherwise failed to participate in this litigation. Plaintiff has no other means

6   to recover lost profits resulting from Defendant's interference or to establish the

7   invalidity of Defendant's patents, therefore Plaintiff would suffer prejudice if the

8   Court does not enter default judgment.

9          The first *Eitel* factor weighs in favor of default judgment.

10         *2. Merit of Claims and Sufficiency of the Complaint*

11         Next, the Court considers whether Plaintiff's substantive claims have merit

12  and are sufficiently pleaded. *See Eitel*, 782 F.2d at 1471-72. The Complaint alleges

13  that Defendant's patents No. D931,914 and D918,970 are invalid, unenforceable,

14  and cannot be the basis for an infringement claim, and that Defendant used these

15  invalid patents to wrongfully interfere with Plaintiff's contractual relationship with

16  Amazon. *See* ECF No. 1.

17             a. Patent Invalidity

18         Plaintiff first claims that Defendant's patents, D931,914 and D918,970, are

19  invalid under 35 U.S.C. §§ 102 and 103. ECF No. 1 at 9 ¶¶ 24-28.

20         A patent is presumed valid, and a challenger must prove invalidity by clear

ORDER - 14

1    and convincing evidence.  35 U.S.C. § 282; *see also Microsoft Corp. v. i4i Ltd.*

2    *P'ship*, 564 U.S. 91, 95 (2011).  35 U.S.C. § 102(a)(1) "bars a person from receiving

3    a patent on an invention that was in public use, on sale, or otherwise available to the

4    public before the effective filing date of the claimed invention."  *Helsinn Healthcare*

5    *S.A. v. Teva Pharms. USA, Inc.*, 139 S. Ct. 628, 630, 632 (2019) (quotation marks

6    omitted); *see also Magnetar Techs. Corp. v. Intamin, Ltd.*, 801 F.3d 1150, 1156 (9th

7    Cir. 2015) (quoting *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 57 (1998)).

8         Plaintiff has sold its Combo Mold since June 2015, and its Four Sphere Mold

9    since August 2018.  ECF No. 1 at 5 ¶ 9, 7 ¶ 16; ECF No. 1-1; ECF No. 1-3.

10   Defendant applied for design patent protection on seemingly identical product

11   designs on September 30, 2020.  ECF No. 1 at 5-6 ¶ 10-12, 7-8 ¶ 17-19; ECF Nos.

12   1-2, 1-4; ECF No. 14 at 2 ¶ 3.  Therefore, Plaintiff has produced clear and

13   convincing evidence that the patents, D931,914 and D918,970, are not valid under

14   the on-sale bar of 35 U.S.C. § 102(a)(1).  Plaintiff's claim for declaratory judgment

15   of patent invalidity has merit and is sufficiently pleaded.

16         b.  Non-Infringement

17        Plaintiff alleges that, because Defendant's patents are invalid, Plaintiff is

18   entitled to a declaratory judgment that it did not infringe those patents.  ECF No. 1 at

19   10-11 ¶¶ 34-37.  "[I]f at the end of the day, an act that would have been an

20   infringement . . . pertains to a patent that is shown to be invalid, there is no patent to

ORDER - 15

1    be infringed." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 644 (2015).  As

2    Defendant's patents, D931,914 and D918,970, are invalid, Plaintiff's claim for

3    declaratory judgment of non-infringement has merit and is sufficiently pleaded.

4           c.  Patent Unenforceability

5    Plaintiff also alleges that Defendant was aware of Plaintiff's sales of the

6    Combo Mold and Four Sphere Mold but failed to disclose this to the USPTO, which

7    constituted inequitable conduct that rendered Defendant's patents unenforceable.

8    ECF No. 1 at 9-10 ¶¶ 29-33.

9           "Applicants for U.S. patents and their representatives before the [USPTO] are

10   subject to a duty of candor, good faith and honesty in their prosecution of patent

11   applications." *Union Oil Co. of Cal. v. Atl. Richfield Co.*, 208 F.3d 989, 1001 (Fed.

12   Cir. 2002) (citing 37 C.F.R. § 1.56 (1999)).  "A breach of this duty constitutes

13   inequitable conduct." *Id.* (citation and quotation marks omitted).  "If a court

14   determines that a patentee has engaged in inequitable conduct, the court must

15   consider whether, as a matter of equity, the patent should be deemed unenforceable."

16   *Id.* (citation omitted).

17          The Court has found adequate basis to conclude that Patent Nos. D931,914

18   and D918,970 are invalid and that Plaintiff did not infringe them during the relevant

19   time period.  A finding that the invalidated patents are unenforceable would not

20   provide Plaintiff any further relief, such that this claim is now moot.  *Cf. Praxair,*

1    *Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1322 (Fed. Cir. 2008) ("A determination of

2    unenforceability bars a finding of infringement . . . and similarly moots any issue of

3    invalidity.") (citations omitted), *abrogated on other grounds by Nautilus, Inc. v.*

4    *Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014)).

5            d.  Tortious Interference

6            To state a claim for tortious interference with a contract, a plaintiff must

7    prove:

8                    (1) the existence of a valid contractual relationship or
                     business expectancy,
9                    (2) knowledge of the relationship or expectancy on the
                     part of the interferer,
10                   (3) intentional interference inducing or causing a breach
                     or termination of the relationship or expectancy, and
11                   (4) resultant damage to the party whose relationship or
                     expectancy has been disrupted.
12   *Centurion Props. III, LLC v. Chicago Title Ins. Co.*, 375 P.3d 651, 662 (Wash. 2016)

13   (citing *Calbom v. Knudtzon*, 396 P.2d 148, 151 (Wash. 1964)) (paragraph breaks

14   added).  In the patent law context, the plaintiff must also prove that the interferer

15   acted in bad faith.  *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH*, 524 F.3d

16   1254, 1260 (Fed. Cir. 2008) ("Federal patent law . . . preempts state-law tort liability

17   when a patentee in good faith communicates allegations of infringement of its

18   patent. . . .  As a result, 'bad faith must be alleged and ultimately proven, even if bad

19   faith is not otherwise an element of the tort claim.'") (quoting *Zenith Elecs. Corp. v.*

20   *Exzec, Inc.*, 182 F.3d 1340, 1355 (Fed. Cir. 1999)).  To prove bad faith, the plaintiff

ORDER - 17

1    must show that "the claims asserted were objectively baseless, meaning no

2    reasonable litigant could realistically expect to prevail" in an infringement dispute,

3    and that the defendant acted in subjective bad faith. *Judkins v. HT Window Fashion*

4    *Corp.*, 529 F.3d 1334, 1339 (Fed. Cir. 2008) (citations and quotation marks

5    omitted).

6          Here, Plaintiff had a valid contractual relationship with Amazon to sell its

7    Combo Mold product through Amazon's platform. ECF No. 1 at 11-12 ¶ 39.

8    Defendant was necessarily aware of this contractual relationship when it submitted

9    its complaint to Amazon about Plaintiff's Combo Mold product. ECF No. 1 at 12 ¶

10    40; ECF No. 1-5 at 2-3. Defendant's complaint requested that Amazon "remove"

11    the Combo Mold product listing, which would breach or terminate Plaintiff's

12    contractual relationship with Amazon. ECF No. 1 at 6 ¶ 13, 8 ¶ 21; ECF No. 1-5 at

13    3. As a result, Amazon removed Plaintiff's Combo Mold listing, and Plaintiff

14    suffered lost sales and other damage. ECF No. 1 at 8-9 ¶¶ 22-23; 12 ¶ 43. The

15    Amazon listing for Plaintiff's Combo Mold, and product reviews from customers,

16    clearly indicated that Plaintiff began selling the Combo Mold on Amazon several

17    years before Defendant applied for Patent No. D931,914. ECF No. 1-1 at 6-7. No

18    reasonable litigant could realistically expect to prevail in an infringement dispute in

19    these circumstances. Moreover, these allegations provide sufficient basis to infer

20    that Defendant acted in subjective bad faith.

1    In sum, the second and third *Eitel* factors weigh in favor of default judgment

2    on Plaintiff's claims for declaratory judgment of invalidity and noninfringement, and

3    Plaintiff's claim for tortious interference with a contract.  However, the claim for

4    declaratory judgment of unenforceability is dismissed as moot.

5        *3. The Sum of Money at Stake*

6        Next, the Court must consider the sum of money at stake in the action when

7    determining whether default judgment is appropriate.  "Default judgment is

8    disfavored if the sum of money at stake is completely disproportionate or

9    inappropriate" in relation to the seriousness of the defendant's conduct.  *Hygenix,*

10   *LLC v. Xie*, No. 21-cv-957, 2022 WL 1094181, at *3 (D. Nev. Apr. 11, 2022)

11   (citation and quotation marks omitted).

12       Plaintiff calculates the sum of damages at $224,220.46, using the 90-day

13   period before Amazon delisted Plaintiff's Combo Mold to determine the average

14   amount in sales per day.  *See* ECF No. 40 at 17.  While a large sum of money may

15   weigh in favor of decision on the merits, the Court may rely on Plaintiff's

16   declaration of lost profits to assess whether damages are appropriate.  *See NewGen,*

17   *LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (upholding "the district

18   court's damage award of $1,483,075.84" based on the plaintiff owner's estimate of

19   the defendant company's net total profits each month); *Jones v. James Trading Co.*

20   *Ltd.*, No. 21-55896, 2023 WL 3882957, at *1 (9th Cir. June 8, 2023) (upholding

ORDER - 19

1  $7.95 million in damages based on the plaintiff's submission of "two declarations

2  with supporting exhibits substantiating their calculations . . . including for . . .

3  plaintiff's share of defendant company's profits" (citing *NewGen*, 840 F.3d at 617)).

4  Accordingly, this factor does not weigh against default judgment.

5      *4. Possibility of a Dispute Concerning Material Facts*

6      Next, the Court considers the possibility of a dispute concerning material

7  facts.  Where no dispute has been raised, the likelihood that any such dispute exists

8  is remote.  *See Brow Room v. Med. Laser Experts, LLC*, No. 21-CV-49, 2021 WL

9  5830023, at *2 (E.D. Wash. Dec. 8, 2021); *Eitel*, 782 F.2d at 1471-72.

10      In the Answer, Defendant admitted facts relating to its identity and ownership

11  of Patent Nos. D931,914 and D918,970, while denying all other allegations.  ECF

12  No. 14.  At no time, in the Answer or any other filing, has Defendant explained the

13  basis for these denials.  Under the current record, it appears unlikely that Defendant

14  would be able to raise a meritorious dispute of material fact.  This factor weighs in

15  favor of default judgment.

16      *5. Excusable Neglect*

17      The Court next considers the possibility that Defendant's default was due to

18  excusable neglect.  "Generally, courts do not find excusable neglect when

19  defendants were properly served with the complaint."  *BMO Bank N.A. v. Raiden,*

20  *LLC*, No. 23-cv-1465, 2023 WL 8934854, at *2 (W.D. Wash. Dec. 27, 2023)

ORDER - 20

1  (citation omitted).  Plaintiff properly served Defendant with the Summons and

2  Complaint in accordance with Fed. R. Civ. P. 4(f)(3).  *See* ECF No. 9.  Defendant

3  made an appearance through counsel and filed an Answer, although defense counsel

4  later withdrew.  ECF No. 24 at 3.  There is no indication that Defendant's

5  subsequent default is due to excusable neglect.  Accordingly, this factor weighs in

6  favor of default judgment.

7      *6. Policy Consideration*

8      Last, the general rule is that "[c]ases should be decided upon their merits

9  whenever reasonably possible."  *Eitel*, 782 F.2d at 1472 (citing *Pena v. Seguros La*

10 *Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).  While this factor inherently

11 weighs against default judgment, "the mere existence of" Federal Rule of Civil

12 Procedure 55(b) "indicates that this *Eitel* factor is not alone dispositive."  *See Curtis*,

13 33 F. Supp. 3d at 1213 (quoting *Microsoft Corp. v. Lopez*, No. C08-1743, 2009 WL

14 959219, at 3 (W.D. Wash. Apr. 7, 2009)) (quotation marks and alteration omitted).

15 "[W]here a defendant's failure to appear 'makes a decision on the merits

16 impracticable, if not impossible,' entry of default judgment is nonetheless

17 warranted."  *Elec. Frontier Found. v. Global Equity Mgmt. (SA) Pty Ltd*., 290 F.

18 Supp. 3d 923, 948 (N.D. Cal. 2017) (quoting *Craigslist, Inc. v. Naturemarket, Inc.*,

19 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010)).  Defendant's failure to participate in

20

the present litigation has made a decision on the merits impossible.  The final *Eitel* factor weighs in favor of default judgment.

On balance, the *Eitel* factors weigh in favor of granting default judgment in this case.  The Court also concludes that Plaintiff is entitled to the declaratory relief and damages sought and grants the Motion for Default Judgment.

**D. Damages**

Liability for interference with a contract may include "damages for (a) the pecuniary loss of the benefits of the contract . . . ; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected from the interference."  Restatement (Second) of Torts § 744A (1979).[4]  Where "a third person is prevented from performing a contract with the plaintiff, the plaintiff may recover for the loss of profits from the contract."  *Id.* at cmt. b.

---

[4] "In the absence of local authority," the Washington courts look to the Restatement of Torts "to guide the development" of state tort law.  *Tamosaitis v. Bechtel Nat'l, Inc.*, 327 P.3d 1309, 1313 (Wash. Ct. App. 2014) (citing *Sea-Pac Co., Inc. v. United Food & Com. Workers Loc. Union*, 699 P.2d 217 (Wash. 1985); *Calbom*, 396 P.2d at 162).

ORDER - 22

1    Plaintiff seeks $224,220.46 in damages for lost profits under its claim for

2  intentional interference with a contract.  ECF No. 40 at 21.  Plaintiff reached this

3  figure by first determining the average number of Combo Mold units it was selling

4  per day in the 90-day period before Defendant's complaint to Amazon.  ECF No. 35-

5  1 at 3 ¶ 11.  Then, Plaintiff used that average sales number to estimate the total

6  number of lost sales for each day between February 14 and November 30, 2022.

7  ECF No. 35-1 at 3-4 ¶¶ 12-13.  Finally, Plaintiff multiplied the total number of lost

8  sales by the average profit-per-unit it earned in the 90-day period before Defendant's

9  complaint.  ECF No. 35-1 at 5 ¶ 16.  The Court notes two issues with this

10  calculation.

11    First, Plaintiff has counted February 14 and 15, 2022, as part of the period

12  after Defendant's complaint.  *See* ECF No. 35-1 at 8.  The Complaint alleges that

13  Defendant submitted its complaint to Amazon on February 16, 2022.  ECF No. 1 at

14  8 ¶ 21.  According to an exhibit attached to the Complaint, Amazon sent Plaintiff

15  notice of Defendant's complaint and the delisting of the Combo Mold at 9:17 a.m.

16  on February 16, 2022.  ECF No. 1-5 at 2.  However, Mr. Wilson's declaration states

17  that Defendant submitted its complaint to Amazon on February 14, 2022.  ECF No.

18  35-1 at 1-2 ¶ 3.  Given the conflicting facts in Plaintiff's filings, Plaintiff has not

19  demonstrated that it is entitled to damages for lost sales on February 14 and 15,

20  2022.  The Court strikes the $686.00 and $897.42 in lost profits claimed for

February 14 and 15, 2022, respectively, reducing the claimed damages by a total of $1,583.42.

Second, in the instant motion, ECF No. 35 at 17, Plaintiff states its "average net profit per unit" in the period before Defendant's complaint was approximately $3 per unit *less* than Mr. Wilson reports in his declaration, ECF No. 35-1 at 5.  Using the table of sales data Plaintiff provided, the Court performed its own calculations of the average net profit per unit during this period.  These calculations indicate that the higher figure provided by Mr. Wilson is correct; the lower figure cited in the motion appears to be an error.

Finally, the Court notes that Plaintiff has opted to forego damages for other economic harms suffered as a result of Defendant's conduct.  For example, Mr. Wilson states that Plaintiff lost standing in Amazon's product rankings due to the period of near-zero sales following Defendant's complaint, and this loss of standing reduced the chance that Amazon's algorithm would suggest Plaintiff's products to potential customers.  ECF No. 37 at 3 ¶¶ 9-10.

Accordingly, the Court awards Plaintiff $222,637.04 in damages.

**E. Attorney Fees Under 35 U.S.C. § 285**

*1. Exceptional-Case Standard*

"The court in exceptional cases may award reasonable attorney fees to the prevailing party."  35 U.S.C. § 285.  An exceptional case, under this statute, is "one

that stands out from others with respect to the substantive strength of a party's

litigating position (considering both the governing law and the facts of the case) or

the unreasonable manner in which the case was litigated." *OneSubsea IP UK Ltd. v.*

*FMC Techs., Inc.*, 68 F.4th 1285, 1291 (Fed. Cir. 2023) (quoting *Octane Fitness*

*LLC v. Icon Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)) (quotation marks

omitted).  A district court must "determine if a particular case is exceptional on a

case-by-case basis, in the exercise of [its] discretion, taking account of the totality of

the circumstances." *Id.* (citing *Octane Fitness*, 572 U.S. at 554).  Ultimately, the

district court must find "bad faith or inequitable conduct on the part of the losing

party that would make it grossly unjust for the prevailing party to be left with the

burden of his litigation expenses." *Carpet Seaming Tape Licensing Corp. v. Best*

*Seam Inc.*, 694 F.2d 570, 581 (9th Cir. 1982).

 The current circumstances amount to an exceptional case.  Plaintiff has

presented a substantively strong case for its claims of patent invalidity,

noninfringement, and tortious interference with a contract.  Moreover, Defendant has

litigated this matter in an unreasonable manner by failing to appear or otherwise

participate in this case, after receiving service and denying nearly all of Plaintiff's

allegations in its Answer.  As explained above, Defendant acted in bad faith when it

submitted an infringement complaint to Amazon for a product listing that clearly

predated (and therefore invalidated) its patent.  As such, the Court finds that an

award of attorneys' fees is appropriate to avoid gross injustice to Plaintiff, pursuant

to 35 U.S.C. § 285.

     *2. Reasonable Amount of Fees*

     Plaintiff's counsel requests an award of $31,577.00 in fees and $402.00 in

costs.  Plaintiff's fee request is based on the following calculation:

| Name | Position | Date Range | Fee Rate | Hours | Total Fees |
|------|----------|-----------|----------|-------|-----------|
| Brian Platt | Attorney | 2/16/22 – 9/16/22 | $525 | 28.3 | $14,857.50 |
| | | 10/24/22 | $625 | 0.2 | $125.00 |
| | | 10/26/23 - 10/27/23 | $650 | 16.6 | $10,790.00 |
| | | | *Subtotal:* | *45.1* | *$25,772.50* |
| Mike Pack | Attorney | 2/24/22 | $325 | 9.2 | $2,990.00 |
| | | | *Subtotal:* | *9.2* | *$2,990.00* |
| Jennifer Hunter | Paralegal | 3/23/22 | $245 | 0.3 | $73.50 |
| | | 2/23/22 – 9/19/22 | $295 | 8.3 | $2,448.50 |
| | | 10/18/22 - 10/3/23 | $325 | 0.9 | $292.50 |
| | | | *Subtotal:* | *9.5* | *$2,814.50* |
| | | | **Total:** | **63.8** | **$31,577.00** |

ECF No. 38 at 3.

     A variety of federal fee-shifting statutes permit a court to award reasonable

attorney's fees to a prevailing party, and the "case law construing what is a

'reasonable' fee applies uniformly to all of them." *City of Burlington v. Dague*, 505

U.S. 557, 562 (1992) (citations omitted).  There is a "strong presumption" that the

lodestar figure—"the product of reasonable hours times a reasonable rate"—

"represents the reasonable fee." *Id.* at 559, 562 (citations and quotation marks

ORDER - 26

1    omitted).  The requesting party bears the burden of submitting evidence supporting

2    the hours worked and rates claimed.  *Webb v. Bd. of Educ. of Dyer Cnty.*, 471 U.S.

3    234, 242 (1985) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

4         a.  Hours Expended

5         First, the Court must determine the number of hours reasonably expended on

6    the litigation.  "By and large, the district court should defer to the winning lawyer's

7    professional judgment as to how much time he or she was required to spend on the

8    case."  *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citation and

9    alteration omitted).  But only hours that are "reasonably expended *on the litigation*"

10   are compensable under § 1988.  *Webb*, 471 U.S. at 242 (emphasis in original)

11   (citation omitted).

12        The billing records submitted contain some time that is not clearly tied to the

13   instant litigation.  In particular, Mr. Platt logged time in February 2022 for tasks

14   "regarding preparation of appeal."  ECF No. 38-1 at 2-3.  Counsel does not explain

15   how this was time reasonably expended on the instant litigation.  However, some of

16   this time was also attributed to investigative tasks, which presumably assisted

17   counsel in drafting the Complaint a few days later.  *See* ECF No. 38-1 at 3.  The

18   Court deducts 1 hour from Mr. Platt's combined 4.7 hours between February 16 and

19   17, 2022.

20

1          b.  Hourly Rates

2          Next, the Court must determine whether Plaintiff's counsel seeks reasonable

3  hourly rates.  A rate is reasonable when it comports with rates "prevailing in the

4  community for similar services by lawyers of reasonably comparable skill,

5  experience and reputation."  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

6  "Generally, the relevant community is one in which the district court sits."  *Davis v.*

7  *Mason Cnty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (citations omitted), *superseded by*

8  *statute on other grounds as recognized by Davis v. City & Cnty. of San Francisco*,

9  976 F.2d 1536, 1556 (9th Cir. 1992).  But "rates, other than those of the forum, may

10  be employed if local counsel was unavailable, either because they are unwilling or

11  unable to perform" for lack of the "experience, expertise, or specialization required

12  to handle properly the case." *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir.

13  1992).

14          Plaintiff's counsel provides no argument or cited authority (1) that the

15  requested rates comport with rates prevailing in this District for lawyers of

16  reasonably comparable skill, experience, and reputation or (2) that local counsel was

17  unavailable.  *See id.*  As such, the Court has conducted its own review of fee awards

18  in this District and found the following rates reasonable for lawyers and paralegals

19

20

with similar experience in this District: **$375 per hour for Mr. Platt**,[5] **$215 per hour for Mr. Pack** (unspecified level of experience),[6] and **$145 per hour for Ms.**

---

[5] *See* Motion, Declaration, and Fee Order, *Vandervert Construction, Inc. v. Allied World Specialty Ins. Co.*, No. 21-CV-197 (E.D. Wash. Feb. 25, 2022, to Jan. 6, 2023), ECF Nos. 28, 29, 68 ($350-375 per hour for principal attorneys with 16 to 18 years' experience and subject-matter specialization); Motion, Declaration, and Fee Order, *The Brow Room v. Med. Laser Experts*, No. 21-CV-49 (E.D. Wash. Dec. 22, 2021, to Mar. 10, 2022), ECF Nos. 15, 16, 21 ($250 per hour for principal attorney with 14 years' experience).

[6] *See* Motion, Declaration, and Fee Order, *Vandervert Construction*, No. 21-CV-197, ECF Nos. 28, 29, 68 ($185 per hour for an associate attorney with 3 years' experience); Order, *Butcher v. Ward*, No. 22-CV-23 (E.D. Wash. Aug. 2, 2022), ECF No. 26 at 23 ($175 per hour for associate attorney with 7 years' experience Motion, Declaration, and Fee Order, *The Brow Room*, No. 21-CV-49, ECF Nos. 15, 16, 21 ($215 per hour for associate attorney with 5 years' experience); Order, *Bds. of Trustees of the Inland Empire Elec. Workers Welfare Trust v. Excel Elec. Servs.*, No. 21-CV-200 (E.D. Wash. Sept. 27, 2022), ECF No. 15 ($180-240 per hour for associate attorneys with subject-matter specialization and unspecified experience).

ORDER - 29

1  **Hunter**.[7]

2      c.  Lodestar Calculation

| Name | Position | Fee Rate | Hours | Total Fees |
|------|----------|----------|-------|------------|
| Brian Platt | Attorney | $375 | 45.1 | $16,912.50 |
| | | | -1.0 | -$375.00 |
| | | *Subtotal:* | *45.1* | *$16,537.50* |
| Mike Pack | Attorney | $215 | 9.2 | $1,978.00 |
| | | *Subtotal:* | *9.2* | *$1,978.00* |
| Jennifer Hunter | Paralegal | $145 | 9.5 | $1,377.50 |
| | | *Subtotal:* | *9.5* | *$1,377.50* |
| **Total Attorney's Fees:** | | | **62.8** | **$19,893.00** |

The Court awards Plaintiff $19,893.00 in fees and $402.00 in costs.

Accordingly, **IT IS HEREBY ORDERED:**

1.      Plaintiff Glacio, Inc.'s Second Motion for Default Judgment, **ECF No. 36,** is **GRANTED**.

2.      **DEFAULT JUDGMENT IS HEREBY ENTERED** in favor of Plaintiff Glacio, Inc.

––––––––––––––––––

[7] *See* Motion, Declaration, and Fee Order, *Vandervert Construction*, No. 21-CV-197, ECF Nos. 28, 29, 68 ($145 per hour for a paralegal with more than 20 years' experience); Order, *Bds. of Trustees of the Inland Empire Elec. Workers Welfare Trust*, No. 21-CV-200, ECF No. 15 ($100 per hour for paralegal with unspecified experience).

3.    The Court **FINDS AND DECLARES** that Defendant Dongguan Sutuo Industrial Ltd. Co.'s Design Patent Nos. D918,970 and D931,914, are invalid pursuant to 35 U.S.C. § 102(a)(1).

4.    The Court **FURTHER FINDS AND DECLARES** that Plaintiff Glacio, Inc.'s Combo Mold and Four Sphere Mold products do not infringe Defendant Dongguan Sutuo Industrial Co. Ltd.'s Design Patent Nos. D918,970 or D931,914.

5.    Judgment is awarded to Plaintiff Glacio, Inc. against Defendant Dongguan Sutuo Industrial Co. Ltd. in the amount of **$222,637.04**.

6.    Attorneys' fees are awarded to Plaintiff Glacio, Inc. against Defendant Dongguan Sutuo Industrial Co. Ltd. in the amount of $19,893.00, plus $402.00 in costs, for a total of **$20,295.00 in fees and costs**.

7.    Pursuant to Fed. R. Civ. P. 54, the Clerk of Court is directed to enter Judgment against Defendant Dongguan Sutuo Industrial Co. Ltd. accordingly, noting the applicable post-judgment statutory interest rate, 28 U.S.C. § 1961.

**IT IS SO ORDERED.**  The District Court Executive is directed to file this order, provide copies to counsel for Plaintiff Glacio, Inc. and by email to Defendant

Dongguan Sutuo Industrial Co., Ltd., and **CLOSE the file**.

DATED April 18, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 32